RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0127P (6th Cir.)
File Name: 01a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JERIS E. BRAGAN,
     *Petitioner-Appellant,*

     *v.*

     No. 99-6322

DAVID POINDEXTER, Warden,
     *Respondent-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 96-00309—Robert L. Echols, Chief District Judge.

Argued: December 6, 2000

Decided and Filed: April 23, 2001

Before: BOGGS and GILMAN, Circuit Judges;
BECKWITH, District Judge.

———————

*The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** John E. Herbison, Nashville, Tennessee, for Appellant. Ellen H. Pollack, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee. **ON BRIEF:** John E. Herbison, Nashville, Tennessee, for Appellant. Ellen H. Pollack, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

BECKWITH, District Judge. Jeris Bragan appeals the district court's decision denying his petition for writ of habeas corpus based on his allegation of prosecutorial vindictiveness. For the reasons provided below, we affirm.

### I. Facts and Procedural History

In the evidentiary hearing held on this matter before the United States Magistrate Judge William Haynes, the parties stipulated to the following facts:

The Petitioner, Jeris E. Bragan, was charged along with Darleen Bragan, who was then the wife of the Petitioner, with the premeditated and deliberate murder of George Nesbitt Urice in an indictment filed March 30, 1977. The Petitioner and his co-defendant spouse were jointly tried in September 1977. Mr. Bragan was convicted of first degree murder and sentenced to 99 years imprisonment. The former Mrs. Bragan was convicted of second degree murder and sentenced to not less than 15 years nor more than 20 years imprisonment, modified on appeal to a determinate sentence of fifteen years. Mr. Bragan's conviction was affirmed by the Court of Criminal Appeals of Tennessee on January 18,

---

evidence establishing that Respondent's justification was pretextual.

For the reasons provided above, the decision of the district court is **AFFIRMED**.

---

by prosecutors to select the charges initiated against an accused. *See Goodwin*, 457 U.S. at 380 n.11, 102 S. Ct. at 2492 n.11 (acknowledging the broad discretion held by prosecutors to determine the charges).

chosen not to retry cases remanded by an appellate court. The fact that Taylor secured a conviction on the first-degree-murder charge and a sentence of ninety-nine years supports his decision to prosecute.

In addition, the State likely considered the strong societal interest in this case. The indictment and original conviction were on a first-degree-murder charge and the original sentence was ninety-nine years.

In sum, the facts surrounding the reinstatement may support a presumption of prosecutorial vindictiveness. However, after the reinstatement, the State turned the case over to a prosecutor with absolutely no stake in deterring Petitioner from exercising his First Amendment rights and gave the prosecutor *pro tem* total autonomy to decide whether or not to proceed. The prosecutor *pro tem* conducted a comprehensive review of the investigation, evidence, and witnesses and independently decided to proceed with the prosecution. The prosecutor *pro tem* acknowledged his right to choose not to prosecute, an election that he has made in other cases in the past.

While Petitioner may have presented sufficient evidence to establish a presumption of prosecutorial vindictiveness, Respondent has successfully rebutted that presumption. *See Goodwin*, 457 U.S. at 372-73, 102 S. Ct. at 2488 (stating that because the imposition of punishment is the purpose of criminal proceedings, the presence of a punitive motivation "does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity.").[3] Petitioner has failed to come forth with

---

[3] A concern is that a petitioner could obtain immunity from subsequent criminal prosecution by engaging in First Amendment activities. *See Wayte v. United States*, 470 U.S. 598, 614, 105 S. Ct. 1524, 1534 (1985) (stating that the First Amendment confers no such immunity from prosecution). This could restrict the broad discretion held

1979. The Supreme Court of Tennessee denied certiori [*sic*] as to Mr. Bragan on April 9, 1979.

Mr. Bragan filed a petition for a writ of habeas corpus in the United States District Court on July 11, 1989. The writ was granted by the Honorable John T. Nixon in a memorandum and order filed April 17, 1992. The case was reported as *Bragan vs. Morgan*, 791 F. Supp. 704, [*sic*] (M.D. Tenn. 1992). The Court ordered Mr. Bragan released from custody if he was not provided a new trial within sixty (60) days, page 721 of the reported opinion.

Among the bases for this Court's previously granting habeas corpus relief were its findings that prosecuting attorneys at Mr. Bragan's 1977 trial knowingly suppressed evidence favorable to the defense and failed to correct the false or misleading testimony of the State's key witness, William Harold (Buggy) Torbett. The Court opined that Mr. Torbett's false statements were literally put in Torbett's mouth by the prosecutor on direct examination and later repeated in closing argument. The Respondent has acknowledged that Judge Nixon's findings in *Bragan vs. Morgan* as to the prosecuting attorneys' misconduct at the 1977 trial have become the law of the case.

The State complied with this Court's 1992 order by releasing Mr. Bragan from custody on May 22, 1992. Subsequent to his release from custody, Mr. Bragan remained at liberty without bond even though he was subject to being retried in state court on the 1977 indictment.

*          *          *

(Pages 5-6 of Transcript of February 5, 1998 hearing before Magistrate Judge Haynes).

According to Petitioner, after the State dropped its appeal of the 1992 order granting Petitioner's habeas writ, he asked Fred Steltemeier, an attorney, to pursue disciplinary proceedings against Gary Gerbitz, the district attorney general and the lead prosecutor in Petitioner's original trial, and Stan

Lanzo, an assistant district attorney involved in the initial prosecution of Petitioner. On June 22, 1992, Steltemeier filed a complaint with the Board of Professional Responsibility against Gerbitz and Lanzo. Steltemeier based the substance of the complaint primarily on Judge Nixon's memorandum granting Petitioner's habeas writ.

Following his release from prison, Petitioner gave interviews to the Associated Press, *The Tennessean*, the *Banner*, and the *Chattanooga Times* regarding his 1977 trial. He also appeared on several network radio programs as well as at least two radio talk shows in Nashville. The substance of those interviews concerned the perjury of an informant, William "Buggy" Torbett, and Petitioner's allegations that Gerbitz and Lanzo arranged for Petitioner and the informant to be locked in the same cell, that Gerbitz and Lanzo suborned perjury, and that they coached the informant as to what to say. Petitioner also communicated to the media that a witness at his original trial, Ralph Janow, had expressed that he was in fear of his life, and that Janow was subsequently murdered. Petitioner also appeared on television and spoke before groups about his trial and his prosecutors. In January 1993, Petitioner completed a book entitled *Beyond Prison Walls*, an autobiography scheduled for release on April 19, 1993. Petitioner summarized the content of the book's discussion of Gerbitz and Lanzo:

> [t]hat I believe the evidence shows that they were corrupt prosecutors that suborned Mr. Torbett to perjury. That they arranged to have me placed in a cell with him so he could identify me. And that they went to great lengths to cover that up and keep it from ever being exposed.

(Page 46 of Transcript of February 5, 1998 hearing before Magistrate Judge Haynes).

In the fall following Petitioner's release, Lanzo telephoned Thomas Bloom, an attorney who represented Petitioner in his successful habeas corpus challenge in 1992. Lanzo proposed a meeting to discuss settlement and offered, in general terms, that Petitioner plead guilty to second-degree murder for time

burden of establishing a reasonable likelihood of vindictiveness. *See Meyer*, 810 F.2d at 1247.

Respondent now bears the burden of rebutting this presumption of vindictiveness. While the original prosecutors in the present case may have acted unreasonably, the State appointed a District Attorney General *pro tem* who was from a different district and had no stake in deterring Petitioner's exercise of his First Amendment rights. Taylor was a mere acquaintance of the original prosecutors and did not discuss the *Bragan* case nor the disciplinary proceedings with those prosecutors. His knowledge of those proceedings was simply an awareness that they existed. The inflammatory statements and allegations made by Petitioner attacked Gerbitz and Lanzo personally and did not in any way implicate Taylor. Taylor had no motive to quiet Petitioner. One could argue, in fact, that the Petitioner's exercise of his First Amendment rights actually benefitted Taylor. He read Petitioner's book and was prepared to offer incriminating statements from that book on cross-examination in the event that Petitioner testified.

Once assigned to the case, Taylor conducted a comprehensive investigation similar to other murder cases he has prosecuted. At the conclusion of this independent investigation, Taylor determined that at the very least he had a good circumstantial evidence case. Taylor elected to proceed based solely on this routine investigation and determination. *See Goodwin*, 457 U.S. at 380 n.11, 102 S. Ct. at 2492 n.11 (stating that "[a] charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution."). Taylor did not discuss the case with Gerbitz or his assistants. Taylor had the authority to terminate the case and used his discretion to elect to prosecute. Taylor indicated that he took this decision whether to proceed very seriously as success or failure at trial would be attributed to him. In the past, Taylor has chosen not to prosecute a case even after the indictment and arraignment stages; Taylor has

the prosecutor who moved to reinstate did not testify; at the state court hearing on the motion to gag Petitioner, the prosecutor did not make any statements as to the basis for his motion; these prosecutors did not testify at the state court hearing on Petitioner's motion to dismiss for prosecutorial vindictiveness; and the prosecutors failed to file a motion to reinstate charges within sixty days of the order granting the writ as provided by that order. The Magistrate Judge concluded that there were no "on the record explanations" for the decision to reinstate the charges.

Petitioner has presented some evidence that suggests the conduct was unreasonable. The time line could support this inference. The district court granted the habeas writ in April of 1992, ordering the State to reinstate the charges within sixty days or release Petitioner. The State did not elect to reinstate the charges at that time. Rather, in March of 1993, almost one year after the district court's order, the State chose to reinstate charges. There is no evidence that the prosecutors discovered new facts at any time between April of 1992 and March of 1993.[2] In addition, it is curious that the original prosecutors and Gerbitz's assistant who moved to reinstate did not testify before the Magistrate Judge, in defense of their actions.

Considering that the prosecutors had a significant and very personal stake in deterring the exercise of rights in this case, as opposed to, for example, the stake in deterring routine invocations of procedural rights, Petitioner has fulfilled his

---

[2]It should be noted that the time line could also suggest that no ill motive existed. Petitioner testified that he was interviewed and made statements regarding the prosecutors soon after his release in May 1992. The disciplinary complaint was filed in June 1992. Yet the prosecutors presented the plea offer for time served in the fall of 1992. Petitioner continued to make disparaging remarks in the fall and winter of 1992 and gave his final interview in December 1992. He completed his book, which severely criticized the prosecutors, in January 1993. Charges were not immediately filed in response to any of these acts, but were filed at the end of March 1993. The book was scheduled for public release in April of 1993, just after the charges were filed.

served. Lanzo communicated this offer to Petitioner who responded "rather immediate[ly] and clear[ly] that he was not guilty of the crime" and refused to plead guilty to second-degree murder.

The stipulated facts presented to the United States Magistrate Judge during the evidentiary hearing continue as follows:

*          *          *

On motion of the State of Tennessee, the murder prosecution was reinstated to the trial court's docket by order filed March 31, 1993. The Petitioner was arraigned in the Criminal Court of Hamilton County, Tennessee on April 19, 1993.
On the day of the state court arraignment, attorneys for the State of Tennessee filed in open court a motion seeking that, as a condition of the Petitioner being released upon his own recognizance, the Petitioner be prohibited 'from making any pre-trial, extrajudicial statements that would be in violation of the requirements that Counsel for the Defendant and the State must comply with as set out in Disciplinary Rule 7-107 of the Tennessee Code of Professional Responsibility.' The trial court granted the State's motion, and an order prohibiting the Petitioner from making certain extrajudicial statements remained in effect until vacated on the Petitioner's application by the Court of Criminal Appeals of Tennessee.
On motion of the Petitioner, the district attorney general for the eleventh judicial district, Hamilton County, and all assistant district attorneys general for that district were disqualified and a district attorney general pro tempore was appointed to prosecute case [*sic*] on behalf of the State.

(Pages 6-7 of Transcript of February 5, 1998 hearing before Magistrate Judge Haynes).

James Michael Taylor, District Attorney General for the 12th Judicial District for the State of Tennessee since 1992, served as District Attorney General *pro tempore*. At the time, he had approximately 17 years of legal experience. Taylor considered Gerbitz and Lanzo acquaintances but not friends.

Once assigned to the case in July 1993, Taylor met with the investigator in charge of the case and requested all of the files, evidence, and transcripts from the case. Taylor read all of the transcripts, some several times; examined the evidence; reviewed witness statements taken by the police; and accompanied one of his investigators to the scene where they took photographs and measurements and re-examined the evidence. Taylor interviewed several of the police officers, the man who was the medical examiner at the time of the murder, and Petitioner's ex-wife. Either Taylor's investigator or Taylor's assistant interviewed the remaining, available witnesses. After review of the entire case file, Taylor determined that at the very least he had a "good circumstantial evidence case for first degree murder."

Taylor's review of the evidence did not disclose any evidence that would not have been available to Gerbitz at the time he decided to reinstate the case. Taylor did not know of any change in the law between the time of the reinstatement and the time he entered the case that would have affected the decision to reinstate.

Taylor confirmed that he made an independent decision to prosecute the case and that it was not colored by anything that had previously occurred in the case between the Chattanooga District Attorney's office and Petitioner. Taylor denied that he had any personal stake in the prosecution of the case other than performing his duty as a district attorney. He does not recall ever seeing the complaint filed before the disciplinary board against Gerbitz and Lanzo. The media and others asked Taylor about that complaint during the *Bragan* trial, and he responded that the complaint was not his concern. He volunteered that he did not handle this case any differently

district court, in accepting the report and recommendation, adopted these findings.

Petitioner first argues that there exists sufficient circumstantial evidence to find actual vindictiveness. He emphasizes Gerbitz's decision not to retry Petitioner within sixty days after the grant of habeas corpus relief, the prosecution's offer of a plea for time served, the timing of the decision to reinstate, the prosecutor's pursuit of the gag order for the second trial, and the failure of the prosecutors, other than the *pro tem* prosecutor, to testify as to these matters.

After review of these facts, we conclude that Petitioner fails to satisfy the onerous burden of establishing actual vindictiveness. These facts fail to prove that the State reinstated Petitioner's case in order to punish Petitioner for exercising his First Amendment rights. Rather, the facts presented here are evidence to consider in determining whether a court should presume an ill motive or prosecutorial vindictiveness. Thus, we proceed to the inquiry whether the evidence, considering all of the circumstances, establishes a reasonable likelihood of vindictiveness.

The original prosecutors did have some stake in deterring Petitioner's exercise of his First Amendment rights. Petitioner's public statements via print, radio, and television media; a published book; and speaking engagements were highly critical of the prosecutors. These statements, at times containing serious allegations against the prosecutors, continued during a period in which a disciplinary charge was pending against the prosecutors based on conduct which occurred at Petitioner's original trial. The motion to gag Petitioner, filed by the original prosecutors on the day of the 1993 arraignment, indicates that the prosecutors were aware of Petitioner's statements and suggests that the prosecutors had a stake in preventing Petitioner's exercise of his First Amendment rights.

The next question is whether the Petitioner has presented evidence that the State's conduct was unreasonable. The Magistrate Judge and district court rely on the following facts:

456 n.10. We refused to consider the prosecutor's statement that she committed a mistake, but agreed to consider the prosecutor's claims that the Grand Jury was unavailable and that the prosecutor was inexperienced. *Id.* at 456.

If the government fails to present evidence sufficient to rebut the presumption, the presumption stands and the court must find that the prosecutor acted vindictively. *Meyer*, 810 F.2d at 1245. The remedy is dismissal of the charges or other appropriate remedies. *Id.* at 1249. If the government produces evidence to rebut the presumption, the defendant must prove that the offered justification is pretextual and that actual vindictiveness has occurred. *Id.*

An additional factor in the present case is that two sets of prosecutors are involved. The United States Supreme Court in *Thigpen v. Roberts*, 468 U.S. 27, 31, 104 S. Ct. 2916, 2919, 82 L. Ed. 2d 23 (1984), addressed the argument that if two different prosecutors are involved, then a presumption of vindictiveness is inappropriate:

> to the extent the presumption reflects 'institutional pressure that ... might ... subconsciously motivate a vindictive prosecutorial ... response to a defendant's exercise of his right to obtain a retrial of a decided question,' *United States v. Goodwin*, 457 U.S. 368, 377, 102 S. Ct. 2485, 2491, 73 L. Ed. 2d 74 (1982), it does not hinge on the continued involvement of a particular individual.

The Court pointed out that in the past it has referred to actions by "the State," rather than "the prosecutor," and thus held that the involvement of two different prosecutors, though relevant, might not always rebut the presumption. *Id.*

In the present case, the Magistrate Judge found that Petitioner presented no evidence to establish actual vindictiveness, but that he satisfied his burden of proof in establishing a reasonable likelihood of vindictiveness. The Magistrate Judge then determined that Respondent successfully rebutted the presumption of vindictiveness. The

from other murder cases pre-dating or subsequent to the *Bragan* case.

The following concludes the stipulated facts offered at the evidentiary hearing:

> The Petitioner filed a pre-trial motion to dismiss for vindictive prosecution in the Hamilton County Criminal Court. This motion was denied following an evidentiary hearing. Following conviction [of first-degree murder], the Petitioner presented the denial of this motion as an issue on appeal as of right to the Court of Criminal Appeals of Tennessee and in his application for permission to appeal to the Supreme Court of Tennessee.

(Pages 7-8 of Transcript of February 5, 1998 hearing before Magistrate Judge Haynes).

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Tennessee. After granting summary judgment to Respondent on two of the three issues raised by Petitioner, the district court ordered the United States Magistrate Judge to conduct an evidentiary hearing on the claim of prosecutorial vindictiveness. Petitioner claimed that the prosecutor reinstated the charges against Petitioner in unlawful retaliation for his exercise of his First Amendment rights. After the hearing on February 5, 1998, the Magistrate Judge issued a report and recommendation recommending that the district court deny the writ. Subsequently, the district court conducted a limited evidentiary hearing. On August 24, 1999, the district court entered judgment denying Petitioner's application for a writ of habeas corpus.

## II. Analysis

### A. *Standard of Review*

In reviewing a district court's decision to deny a petition brought under 28 U.S.C. § 2254, the Court reviews all questions of fact under a "clearly erroneous" standard and

considers all questions of law *de novo*. *Carson v. Burke*, 178 F.3d 434, 436 (6th Cir. 1999) (citing *Lucas v. O'Dea*, 169 F.3d 1028, 1031 (6th Cir. 1999)); *Nevers v. Killinger*, 169 F.3d 352, 357 (6th Cir.), *cert. denied*, 527 U.S. 1004, 119 S. Ct. 2340, 144 L. Ed. 2d 237 (1999) (citing *DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir. 1998) (en banc)). Mixed questions of law and fact are generally reviewed *de novo*. *Carson*, 178 F.3d at 436; *Rickman v. Bell*, 131 F.3d 1150, 1153 (6th Cir. 1997), *cert. denied*, 523 U.S. 1133, 118 S. Ct. 1827, 140 L. Ed. 2d 962 (1998) (quoting *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257, 117 S. Ct. 2422, 138 L. Ed. 2d 185 (1997)).

B.    *Claim of Prosecutorial Vindictiveness*

For an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his protected statutory or constitutional rights is "'patently unconstitutional.'" *United States v. Goodwin*, 457 U.S. 368, 372 n.4, 102 S. Ct. 2485, 2488 n.4, 73 L. Ed. 2d 74 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 668, 54 L. Ed. 2d 604 ) (internal quotations omitted); *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) ("A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted.") (citing *United States v. Andrews*, 633 F.2d 449, 453-55 (6th Cir. 1980), *cert. denied*, 450 U.S. 927, 101 S. Ct. 1382, 67 L. Ed. 2d 358 (1981)). Thus, a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited. *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27-28, 94 S. Ct. 2098, 2102, 40 L. Ed. 2d 628 (1974)). "The broad discretion accorded prosecutors in deciding whom to prosecute is not 'unfettered,' and a decision to prosecute may not be deliberately based upon the exercise of protected statutory rights." *Adams*, 870 F.2d at 1145 (citations omitted); *United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980) (en banc), *cert. denied by*, *Brooks v. United States*, 450 U.S. 927, 101 S. Ct. 1382, 67 L. Ed. 2d 358 (1981) (stating that a court must reconcile the rule that a

prosecutor has broad discretion to file charges where there is probable cause with the rule that vindictive conduct by prosecutors is unacceptable and requires control).

A defendant may establish prosecutorial vindictiveness through one of two approaches. First, a defendant may demonstrate "actual vindictiveness," *i.e.*, he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights. *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (citing *Goodwin*, 457 U.S. at 380-81, 384 & n.19, 102 S. Ct. at 2492, 2494 & n. 19). This showing, however, is "exceedingly difficult to make." *Meyer*, 810 F.2d at 1245.

Second, a defendant may establish that, in the particular factual situation presented, there existed a "'realistic likelihood of vindictiveness'" for the prosecutor's action. *See Andrews*, 633 F.2d at 453. A court may only presume an improper vindictive motive when a reasonable likelihood of vindictiveness exists. *Goodwin*, 457 U.S. at 373, 102 S. Ct. at 2488. The petitioner must establish that (1) the prosecutor has "some 'stake'" in deterring the petitioner's exercise of his rights and (2) the prosecutor's conduct was somehow "unreasonable." *Anderson*, 923 F.2d at 453-54; *see Andrews*, 633 F.2d at 454.

Once a court has found that a realistic likelihood of vindictiveness exists, the government bears the burden of disproving it or justifying the challenged state action. *Andrews*, 633 F.2d at 456; *see Goodwin*, 457 U.S. at 374, 102 S. Ct. at 2489. In *Andrews*, we concluded that "only objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness."[1] *Andrews*, 633 F.2d at 456. We offered two examples of acceptable explanations -- governmental discovery of previously unknown evidence and previous legal impossibility. *Id.* at

---

[1] In *Andrews*, a charge was added, for the same conduct that was the basis for the original charges, after the defendants exercised their right to appeal a denial of bail.