**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0316n.06
Filed: May 8, 2007

**No. 05-6357**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GILBERT DARREN SIMPSON, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**Before: ROGERS and GRIFFIN, Circuit Judges; and RUSSELL, District Judge.**[*]

**ROGERS, Circuit Judge.** Gilbert Darren Simpson appeals his conviction on charges of conspiracy to distribute marijuana, distribution of marijuana, and possession with the intent to distribute OxyContin. First, Simpson alleges that his indictment was the result of vindictive prosecution and that the district court should have dismissed the indictment or, at least, conducted an evidentiary hearing on the allegation. Second, Simpson asserts that the district court erred both by quashing Simpson's subpoena of an Assistant United States Attorney and by prohibiting questions based on Simpson's vindictive prosecution allegation during cross-examination of a witness.

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1

Finally, Simpson challenges the sufficiency of the evidence supporting all three of the counts on which he was convicted.

Because Simpson failed to establish that there was a realistic likelihood of vindictiveness, the district court did not err by denying Simpson's motion to dismiss the indictment against him or by denying Simpson's request for an evidentiary hearing on the vindictiveness allegation. Because Simpson's vindictive prosecution claim was not relevant to the issue of guilt or innocence, the district court was correct to quash the subpoena of an AUSA and to bar questions directly related to the vindictiveness allegation at trial. Finally, Simpson's sufficiency of the evidence arguments lack merit. Accordingly, Simpson's conviction on all three counts is affirmed.

## I.

Under the direction of Kentucky State Police Detective Vince Kersey, a police informant, Marty Mills, purchased for $20 a bag containing marijuana from Gilbert Darren Simpson at Simpson's home on November 14, 2003. An additional informant reported seeing controlled substances at Simpson's residence on June 4, 2004. On June 18, 2004, the Kentucky State Police executed a search warrant on Simpson's residence and seized 143 OxyContin 40 mg tablets, 8 OxyContin 20 mg tablets, 841 Xanax tablets, and $3,800 in cash. Simpson was arrested on state drug charges and released from custody after he posted a property bond.

In April 2002, more than two years before his arrest, Simpson had filed a civil action against Knox County Jailer Preston Smith alleging civil rights violations. *Simpson v. Smith, et al.*, No.

4:02-cv-00075 (W.D. Ky. Apr. 29, 2003) (transferred to the Eastern District of Kentucky, June 03, 2002, *Simpson v. Smith*, No. 6:02-cv-298). Preston Smith is the father of Assistant United States Attorney Stephen Smith. In November 2002, AUSA Smith was present for an interview with Dale Lewis, a convicted drug dealer who had entered into a cooperation agreement with the United States. Lewis told Fred Baker, a DEA agent, that Simpson was a "customer" to whom Lewis had sold methamphetamine. However, Simpson's name only appears in one notation in Baker's interview notes, and there was no further investigation into Simpson's drug activity based on the 2002 interview with Lewis.

On June 25, 2004, after Simpson's arrest on state drug charges, the supervising AUSA in the London office, Martin Hatfield, completed a "Criminal Openings" form to initiate federal proceedings against Simpson, and assigned the case to AUSA Smith. In July 2004, AUSA Smith arranged for Detective Kersey to interview Lewis about Simpson's drug activity. Lewis reported that he had distributed large quantities of marijuana as well as six to eight ounces of methamphetamine to Simpson. On July 26, 2004, Simpson was arrested on federal charges pursuant to the filing of a criminal complaint by a DEA investigator. On July 28, 2004, AUSA Smith appeared on behalf of the Government at Simpson's initial appearance and moved that Simpson be detained pending trial. Two days later, on July 30, 2004, Smith told AUSA West that Smith "had been advised" that Simpson had filed a civil suit against Smith's father. With Smith's agreement, the case was reassigned to AUSA West. AUSA West represented the Government from that point forward.

AUSA West presented the charges against Simpson to the federal grand jury. The grand jury returned a five-count indictment. Count One charged Simpson with conspiracy to distribute 100 kilograms or more of marijuana; Count Two charged Simpson with distributing fifty grams or more of methamphetamine; Count Three charged Simpson with distribution of less than 250 grams of marijuana; Count Four charged Simpson with possession with intent to distribute OxyContin; and Count Five charged Simpson with possession with intent to distribute benzodiazepine.

Prior to the pre-trial conference, Simpson filed a motion asking the court to dismiss the indictment against him on grounds of vindictive prosecution and requesting an evidentiary hearing on the allegation. Simpson argued that AUSA Smith had an improper stake in Simpson's prosecution because of Simpson's then ongoing civil action against Smith's father, and that Smith acted unreasonably in arranging for Detective Kersey to interview Lewis in connection with Simpson's case. The district court denied Simpson's motion on the grounds that Simpson had not exercised a protected right upon which a vindictiveness claim could be based and, in the alternative, that Simpson had presented no evidence of unreasonable conduct in his prosecution.

After the district court denied Simpson's motion, Simpson's attorney served subpoenas on AUSA Smith and a probation officer involved in the Lewis case. The Government asked the district court to quash the subpoenas and to prohibit discussion of the vindictive prosecution claim at trial. At a hearing on the Government's motions, Simpson argued that the subpoenas were needed to obtain information that was necessary for the effective cross-examination of Lewis. The court found that the subpoenas were "intended merely for the purposes of harassment" and that all discoverable

information relevant to the cross-examination of Lewis was available without the subpoenas. The court therefore granted the Government's motion to quash the subpoenas. The court also ruled that any questions regarding Simpson's pending civil suit against Preston Smith and the allegation of vindictive prosecution would not be permitted at trial because the vindictiveness allegation was not relevant to the issue of Simpson's guilt or innocence. The court noted that the issue of possible bias on the part of Lewis should be addressed by asking him "directly" about what he hoped to gain in return for his testimony.

At Simpson's trial, the Government's evidence included, in part, testimony from Detective Kersey, who testified about his investigation and arrest of Simpson; testimony from Marty Mills, who testified that he purchased $20 of marijuana from Simpson; testimony from Lewis that he had sold Simpson both marijuana and methamphetamine; and a report and testimony from a chemist for the Kentucky State Police Crime Laboratory concerning the identity of the controlled substances seized during the June 18, 2004, search of Simpson's residence.

At the close of the Government's case, Simpson moved for a judgment of acquittal, arguing that the evidence on all five counts was insufficient to support a conviction. The district court denied the motion, holding that "all five counts should go to the jury for determination." The jury returned verdicts of guilty on Counts One, Three, Four, and Five, and not guilty on Count Two. The Government moved to set aside the jury verdict as to Count Five because the jury instruction (like the indictment) mistakenly referred to benzodiazepine instead of alprazolam, the pharmaceutical designation for Xanax. Count Five was dismissed and Simpson was sentenced to 360 months on

each of Counts One and Four, and 120 months on Count Three, with all terms to run concurrently, for a total sentence of 360 months.

**II.**

**A. Prosecutorial Vindictiveness**

Because Simpson has failed to establish two of the three elements required to create a realistic likelihood of vindictiveness, the district court did not err by refusing either to dismiss the indictment against Simpson or to conduct an evidentiary hearing on the vindictiveness allegation.

Evaluation of Simpson's contentions regarding vindictive prosecution, both that the district court should have dismissed his indictment and that the court should have conducted an evidentiary hearing on the claim, require essentially the same analysis. Simpson does not argue that he has proof of "actual vindictiveness" in this case; rather, he argues that the facts he alleged gave rise to "a realistic likelihood of vindictiveness." Therefore, in order to determine whether the district court should have conducted an evidentiary hearing on the claim, the question is whether Simpson's factual allegations support a prima facie claim of vindictiveness. *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) ("[W]here there has been a prima facie showing of 'a realistic likelihood of vindictiveness,' it is incumbent upon the district court to 'conduct an evidentiary hearing where the government's explanations can be formally presented and tested.'" (dealing with a claim of selective prosecution) (quoting *United States v. Andrews*, 633 F.2d 449, 457 (6th Cir. 1980) (en banc) (vindictive prosecution))).

Because Simpson has not alleged facts that show a realistic likelihood of vindictiveness that would warrant an evidentiary hearing, it follows that the district court did not err in refusing to dismiss Simpson's indictment because of vindictive prosecution. Accordingly, the correctness of the district court's refusal to grant a hearing and the court's refusal to dismiss the indictment against Simpson may both be established by looking to see whether the facts alleged by Simpson support each of the elements of the prima facie vindictive prosecution claim.

A prima facie case of vindictive prosecution requires allegations of fact showing "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). "Presumably, if the first three elements are present, this may help establish grounds to believe the fourth is present, that there is the required 'realistic likelihood of vindictiveness,' which the government would have to rebut." *Id*.

### 1) *Exercise of a Protected Right*

We assume that Simpson adequately asserted a protected right in filing a civil rights suit. We do not rely on the district court's reasoning that "'the protected right' the prosecutor is alleged to have intentionally impeded must be a constitutional right,"[1] and, indeed, the Government does not

---

[1] The district court also based its ruling on the alternative ground that Simpson "has not presented any evidence of unreasonable conduct." That alternative holding, which we uphold, suffices for affirmance.

defend this aspect of the district court's reasoning. While many cases refer to constitutional rights only when restating the elements of prosecutorial vindictiveness, this court has explicitly recognized that "a decision to prosecute may not be deliberately based upon the exercise of protected statutory rights." *United States v. Adams,* 870 F.2d 1140, 1145 (6th Cir. 1989). The protected right exercised in *Adams* was the criminal defendant's right to pursue an unrelated civil suit against another government agency. Therefore, it appears that Simpson's right to bring a civil action under 42 U.S.C. § 1983 is a protected right, the exercise of which may be the basis of a claim of prosecutorial vindictiveness.

### 2) *A Prosecutorial Stake in the Exercise of the Protected Right*

Because the underlying vindictiveness alleged by Simpson pertains to AUSA Smith personally and exclusively, and because Smith was not responsible for any critical prosecutorial decision in this case, the Government has rebutted any presumption of prosecutorial vindictiveness that might arise from Smith's stake in Simpson's prosecution. We assume, for sake of argument, that Simpson's civil action against AUSA Smith's father might constitute an impermissible conflict with regard to AUSA Smith.[2] However Simpson's claim still fails this element of the prima facie

---

[2]The Government asserts that there could have been no improper prosecutorial stake here because Smith did not know about Simpson's § 1983 action when Smith referred Detective Kersey to Lewis. The district court accepted this assertion of fact, and found that, "Upon learning that [Simpson] had previously initiated a pending civil matter against AUSA Smith's father, Mr. Smith recused himself and the matter was reassigned to AUSA Roger West." If true, this fact would rebut Simpson's allegation of a prosecutorial stake even with respect to Smith. However, because the record does not appear to reveal the evidentiary basis for this finding, we do not rely on it.

vindictiveness claim because this conflict is personal and peculiar to Smith. Accordingly, the alleged conflict affects only those prosecutorial actions undertaken by Smith. The only such action alleged by Simpson is Smith's decision to arrange for Detective Kersey to interview Lewis. Even if it is granted, for the sake of argument, that this action was undertaken for improper motives, the Government's decision to prosecute Simpson is not tainted by that motive because all decisions actually relating to Simpson's prosecution were made by individuals other than Smith.

This court addressed the effect of the pre-trial recusal of potentially conflicted prosecutors in *Bragan v. Poindexter,* 249 F.3d 476 (6th Cir. 2001). *Bragan* involved a vindictive prosecution claim that arose from the decision to re-prosecute Bragan, a criminal defendant who had been released from prison pursuant to a successful habeas corpus challenge to his initial conviction. *Id*. at 478. Bragan alleged that the state chose to prosecute him a second time in retaliation for Bragan's public criticism of the government's conduct during his first prosecution. *Id*. at 479-80. After reinstating charges against Bragan, the prosecutorial office that had prosecuted Bragan in his first trial and that had been the target of Bragan's public criticism was disqualified and a new district attorney pro tempore was appointed. *Id*. at 479. This court held that because the prosecutor pro tempore did not share the original prosecutors' stake in the case, and because the new prosecutor had the authority to proceed or not proceed with the prosecution, the presumption of prosecutorial vindictiveness based on the original prosecutors' stake in reinstating the charges was rebutted. *Id*. at 484-85.

In this case, it is undisputed that supervising AUSA Hatfield made the initial decision to prosecute Simpson and that AUSA West approved the indictment and presented the case to the grand jury. Like the prosecutor pro tempore in *Bragan*, neither of these prosecutors shared Smith's alleged stake in the prosecution. Therefore, even if Smith's stake in the prosecution were sufficient to support a presumption of prosecutorial vindictiveness, the Government has successfully rebutted that presumption.

### 3) *Unreasonableness of the Prosecutor's Conduct*

The district court correctly held that Simpson offered no evidence of unreasonable conduct to support his vindictiveness claim. Simpson asserts that AUSA Smith's actions in contacting Detective Kersey and arranging for Kersey to interview Lewis were unreasonable. To support this allegation Simpson offers two additional assertions. First, Simpson argues that Smith's actions were unreasonable simply because Smith had a conflict of interest. However, this argument appears to conflate the unreasonableness element of the vindictiveness claim with the prosecutorial stake element.

Next, Simpson asserts that there was no reasonable basis for Smith to believe that Lewis had any "relevant information" about Simpson. However, in making this assertion, Simpson discounts the fact that Lewis had identified Simpson as a "customer" in a interview taken in November 2002, and that Smith was present for that interview. Smith contacted Detective Kersey about interviewing Lewis only after state trafficking charges had been brought against Simpson in June 2004. Upon

learning of the later state charges against Smith, there was nothing unreasonable in suggesting that Lewis might have had additional information related to those charges. Because Simpson has not alleged any prosecutorial act that is objectively unreasonable, his vindictiveness claim fails to satisfy this element of the prima facie claim.

4) *Intent to Punish the Defendant for Exercise of the Protected Right*

Finally, because Simpson cannot establish each of the first three elements of a prosecutorial vindictiveness claim, there is no realistic likelihood of vindictiveness that would entitle Simpson to a rebuttable presumption as to the fourth element and Simpson's vindictiveness claim fails.

**B. Quashing of Subpoena and Limitation of Questioning**

The district court did not err either by quashing Simpson's subpoena of AUSA Smith or by ruling that questions regarding Simpson's civil suit against Preston Smith were irrelevant and, therefore, prohibited at trial. Simpson asserts that by quashing his subpoena of AUSA Smith the court denied Simpson's Sixth Amendment right to have compulsory process for obtaining witnesses in his favor. However, the compulsory process right does not entitle the defendant to present evidence that is irrelevant. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). From Simpson's own argument on appeal, it is evident that Simpson wished to question Smith about matters relevant to Simpson's vindictive prosecution claim, not the ultimate issue of Simpson's guilt or innocence.

In *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006), this court rejected an argument very similar to the one that Simpson makes here. In *Abboud*, the criminal defendants sought to raise the defense of selective prosecution. *Id*. at 579. However, in response to a pre-trial motion, the district court held that the defendants were precluded from presenting evidence of selective prosecution at trial. *Id*. at 562. This court upheld the district court's ruling against the defendants' Sixth Amendment challenge because "[t]he question of discriminatory prosecution relates not to the guilt or innocence of [the defendants], but rather addresses itself to a constitutional defect in the institution of the prosecution." *Id*. at 579. There is nothing to distinguish Simpson's vindictive prosecution claim from the selective prosecution claim in *Abboud* in this respect. Because Simpson sought to question Smith on an issue that was not before the jury, and which had already been decided by the district court, the court was correct to quash the subpoena.

For the same reason, the district court was correct to prohibit Simpson's attorney from exploring his vindictive prosecution theory at trial. Simpson argues that his inability to question Lewis about the alleged vindictive prosecution denied Simpson the opportunity for effective cross-examination. This court's opinion in *Abboud* is again helpful in illuminating the flaw in Simpson's argument. In *Abboud*, this court observed that the defendants "seem[ed] to conflate the concepts of witness bias and selective prosecution" and the court explained that "[s]elective prosecution is a separate and distinct [constitutional] claim." *Id*. at 580. The same is true here: Simpson's claim of prosecutorial vindictiveness is distinct from any bias that may have been used to impeach Lewis's testimony.

Furthermore, the district court's decision barring discussion of Simpson's vindictive prosecution claim did not prevent Simpson from questioning Lewis about any bias, prejudices, or ulterior motives. In fact, Simpson's attorney did question Lewis about his motive for testifying, asking if Lewis "hop[ed] that [he] might get more time off for [his] testimony" against Simpson. Simpson's counsel also attacked Lewis's credibility by highlighting the fact that Lewis did not provide detailed information about his transactions with Simpson when Lewis was first interviewed by Agent Baker in 2002, and only provided these details when interviewed by Detective Kersey in 2004. Accordingly, the record does not support Simpson's claim that the district court's ruling concerning the inadmissibility of evidence relevant to Simpson's vindictive prosecution theory prevented Simpson's counsel from effectively cross-examining Lewis.

### C. Sufficiency of the Evidence

Simpson's arguments that the district court erred by denying his motion for judgment of acquittal based on the insufficiency of the evidence against him on Counts One, Three, and Four are without merit. "The relevant question in assessing a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This court will not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (quotation marks and citations omitted).

Count One of the indictment against Simpson charged him with conspiracy to distribute marijuana. Simpson challenges the sufficiency of the evidence supporting this charge by attacking the credibility of the principal witness with respect to this charge, Dale Lewis. Simpson argues that Lewis's testimony concerning substantial marijuana sales to Simpson was not credible in light of Lewis's failure to mention any such transactions when Lewis was interviewed by Agent Baker two years earlier. This argument fails because it asks this court to make a determination about the credibility of Lewis as a witness. *See Jackson*, 470 F.3d at 309.

Count Three charged Simpson with the sale of marijuana. Simpson notes that the Government did not introduce the laboratory report showing that the substance was marijuana. However, this court has recognized that

> [t]he identity of a drug may be ascertained by circumstantial evidence . . . . Such circumstantial evidence may include evidence of the physical appearance of the substance involved in the transaction . . . , testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

*United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (quoting *United States v. Scott*, 725 F.2d 43, 45-46 (4th Cir. 1984)). Here, it is clear from the testimony of Marty Mills, the informant who made the purchase upon which this charge is based, that Mills understood the substance he bought from Simpson to be marijuana. Additionally, Detective Kersey testified that, after the purchase, he looked at the bag of marijuana and identified it as marijuana. Based on this evidence, a reasonable juror could have concluded that the substance involved in the sale was in fact marijuana.

Simpson's challenge to Count Four is similar to his argument with respect to Count Three. Count Four charged Simpson with possession with intent to distribute OxyContin. Simpson notes that the alleged OxyContin tablets had different markings: 143 were marked OC 40 while 8 were marked OC 20. Simpson then notes that the crime lab chemist analyzed only a portion of one type of tablet out of a total of 151 pills identified as OxyContin. Simpson argues that based on this limited sampling, and given the existence of placebo pills, the Government did not establish the identity of the substance in each tablet beyond a reasonable doubt.[3] This argument is unavailing because the chemist's testimony that she was able to identify all the pills as OxyContin based on the markings on the pills and the scientific test of the one sample was clearly sufficient to support the inference that all of the tablets marked as OxyContin were in fact that controlled substance.

**IV.**

For the foregoing reasons, Simpson's conviction on all three counts is AFFIRMED.

---

[3]Simpson also draws the court's attention to the fact that the chemist's original lab report misidentified the OC 40 pills as OC 80s. The chemist testified that this was the result of a typographical error. Given that this court will not weigh the evidence presented at trial, it is not clear what significance Simpson believes this fact to have in this appeal. *See Jackson*, 470 F.3d at 309.