UNITED STATES of America,
Appellant,

v.

Christine MEYER, et al.

UNITED STATES of America,
Appellant,

v.

Theresa FITZGIBBON, et al.

UNITED STATES of America,
Appellant,

v.

Virginia SENDERS, et al.

Nos. 85–6169, 85–6171 and 85–6172.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1986.

Decided Feb. 13, 1987.

As Amended Feb. 13, 1987.
Rehearing En Banc Granted
April 30, 1987.*

---

* Opinion and judgment vacated.

Barry Coburn, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Robert E. McDaniel, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

Daniel Ellenbogen, Washington, D.C. (appointed by this court) for appellees, Fitzgibbon, et al.

Sherry A. Quirk (appointed by this court), with whom Richard L. Cys and James F. Hibey, Washington, D.C., were on brief, for appellee, Judith Hand.

Mindy Washington, pro se, for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and LEIGHTON,* Senior District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In this case, we review a district court's decision to dismiss several informations on the ground of prosecutorial vindictiveness. The government contends that the district court's finding of vindictiveness is wrong as a matter of law and perilous as a matter of policy. The government further contends that even if vindictive prosecution occurred, the remedy that the district court imposed is unwarranted. We decline to accept these claims. According proper deference to the lower court, we affirm its order to dismiss.

## I. BACKGROUND

On April 22, 1985, officers of the United States Park Police arrested approximately 200 political demonstrators outside of the White House. The officers gave each demonstrator a U.S. Park Police Citation Form, issued pursuant to the District of Columbia's "magistrates' citation system." Each form charged the recipient with "demonstrating without a permit" in violation of 36 C.F.R. § 50.19 and described two options for disposing of the charge. According to the form, the arrestee could either forfeit $50 in full satisfaction of the charge

---

\* Of the United States District Court for the Northern District of Illinois, sitting by designation

pursuant to 28 U.S.C. § 294(d).

or proceed to trial. The maximum penalty on the specified charge was a $500 fine and six months' incarceration.

Although most of the demonstrators chose to forfeit $50, some elected to proceed to trial. At their arraignments, which took place on May 29, June 21, and June 28, 1985, these persons learned that they would have to defend themselves against a further charge. The government had filed two-count informations against the demonstrators who had chosen to exercise their right to trial. Count II of the informations contained the original charge of demonstrating without a permit. Count I contained an additional charge of obstructing the sidewalks adjacent to the White House in violation of 36 C.F.R. § 50.30, which also carries a maximum penalty of six months' imprisonment and a $500 fine. The government extended a plea offer to some of the defendants, under which the government would dismiss Count I of the information and recommend a sentence of six months' unsupervised probation on Count II if the defendant pleaded no contest to the latter count. A number of the defendants accepted this plea arrangement, but 36 chose to go to trial.

On July 30, 1985, counsel for the defendants moved to dismiss the informations on the ground of vindictive prosecution. Counsel also requested a jury trial, noting that the addition of a second charge and the enhanced potential sentence had triggered the defendants' jury trial right. The district court granted the motion for a jury trial and found that defendants' counsel had raised sufficient question concerning prosecutorial vindictiveness to warrant a separate hearing on the issue.

At the hearing on vindictiveness, which occurred on September 11, 1985, the prosecutor immediately moved to dismiss Count I (the added count) of each of the informations. Counsel for the defendants objected, claiming that the sole purpose of the motion was to deprive the defendants of their right to a jury trial. The district court, however, granted the prosecutor's motion to dismiss the added count. The court then heard argument on the defendants' motion to dismiss the informations (which now contained only the original count) on the ground of prosecutorial vindictiveness. The court found that the prosecutor had added a count to the informations solely because the defendants had exercised their right to trial and that such a course of action constituted vindictive prosecution. The court chose to remedy this prosecutorial misconduct by dismissing the informations. After the court denied the government's motion for reconsideration, see Joint Appendix at 99–102, the government filed this appeal.

## II. DISCUSSION

Our first task is to determine the appropriate standard of review in a vindictive prosecution case. Although this court has never faced the question, we find the matter fairly easy to resolve. An appellate court must use the clearly erroneous standard to review a trial court's finding of vindictive prosecution. The clearly erroneous standard ordinarily governs review of a judge's findings in a criminal case on issues other than the defendant's guilt, see Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); Jackson v. United States, 353 F.2d 862, 864–65 (D.C.Cir.1965); the standard governs review not only when the judge's findings are purely factual, but also when they involve mixed questions of law and fact, see United States v. Hart, 546 F.2d 798, 801–02 (9th Cir.1976) (en banc). We can perceive no reason for departing from this general rule in cases of vindictive prosecution, accord United States v. Spiesz, 689 F.2d 1326, 1329 (9th Cir.1982); an appellate court may overturn a judge's finding of vindictiveness only when a review of all of the evidence leaves the court "with the definite and firm conviction that a mistake has been committed," see United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) (defining the clearly erroneous standard). A lower court's decision to dismiss an information or indictment, once a finding of

vindictive prosecution has been appropriately made, is subject to a different standard of review. The choice of remedy for governmental misconduct rests within the sound discretion of the lower court; an appellate court may reverse an order remedying such misconduct only if the order constitutes an abuse of discretion. *See United States v. Artuso*, 618 F.2d 192, 196 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1980). Thus, in reviewing the district court's order to dismiss the informations on the ground of prosecutorial vindictiveness, we must ask a pair of questions: first, whether the finding of vindictiveness is clearly erroneous; and second, if the finding is not clearly erroneous, whether the decision to dismiss the informations constitutes an abuse of the trial court's discretion.

A. *The Finding*

■ "Prosecutorial vindictiveness" is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights. *See United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). In other words, a prosecutorial action is "vindictive" only if designed to penalize a defendant for invoking legally protected rights.

The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, a defendant may show "actual vindictiveness"—that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. *See id.* at 380–81, 384 & n. 19, 102 S.Ct. at 2492, 2494 & n. 19. This showing is, of course, exceedingly difficult to make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicate "a realistic likelihood of 'vindictiveness[,]'" a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. *See Blackledge v. Perry*, 417 U.S. 21, 27–

29, 29 n. 7, 94 S.Ct. 2098, 2102–03, 2103 n. 7, 40 L.Ed.2d 628 (1974). If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively.

The district court in this case held that the defendants had shown actual vindictiveness, but we decline to reach this question. We uphold the ultimate finding—that prosecutorial vindictiveness entered into this case—as not clearly erroneous because we believe that the defendants presented evidence that would allow a court at least to find that a presumption of vindictiveness applied. The government declined to come forward with any evidence that would erase such a presumption and thus doomed itself to the critical finding.

■ The government contends that a presumption of prosecutorial vindictiveness can never apply in a pretrial setting and rests this claim on the Supreme Court's opinion in *United States v. Goodwin*. A magistrate had arraigned Goodwin on several misdemeanor charges, and an attorney from the Department of Justice, who had authority to try only petty crime and misdemeanor cases, took over the case. Plea negotiations ensued, but proved fruitless, and Goodwin asserted his right to a jury trial. Subsequently, an Assistant U.S. Attorney assumed responsibility for the case, and he proceeded to indict Goodwin on more serious charges. *See Goodwin*, 457 U.S. at 370–71, 102 S.Ct. at 2487. Goodwin argued that the facts supported a presumption of vindictive prosecution, but the Supreme Court disagreed. The Court had previously held that post-trial prosecutorial decisions to file increased charges automatically give rise to a presumption of vindictiveness. *See Blackledge*, 417 U.S. at 27–29, 94 S.Ct. at 2102–03. The Supreme Court held in *Goodwin* that this prior ruling did not control because the prosecutor had entered increased charges against

Goodwin prior to trial. *See Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492. The government appears to draw from this opinion the broad principle that a presumption of vindictiveness can never apply in a pretrial context. *See* Brief for Appellant at 18.

We find the government's reading of *Goodwin* unpersuasive. The Supreme Court in *Goodwin* declined to adopt a *per se* rule applicable in the pretrial context that a presumption will lie whenever the prosecutor "ups the ante" following a defendant's exercise of a legal right. *See Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492 ("There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting."). But the Court also declined to adopt a *per se* rule that in the pretrial context no presumption of vindictiveness will ever lie. The lesson of *Goodwin* is that proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context. The rationale supporting the Court's teaching is that this sequence of events, taken by itself, does not present a "realistic likelihood of vindictiveness." *See id.* at 381–84, 102 S.Ct. at 2492–94. But when additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie in the pretrial context. Several post-*Goodwin* courts have adopted this view. They have recognized, as we do today, that a presumption of vindictiveness will lie in the pretrial setting if the defendant presents facts sufficient to show a realistic likelihood of vindictiveness. *See United States v. Krezdorn,* 718 F.2d 1360, 1364–65 (5th Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984); *United States v. Gallegos-Curiel,* 681 F.2d 1164, 1168–69 (9th Cir. 1982). The critical question in this case, as in all others, is whether the defendants have presented such facts—whether the defendants have shown that all of the circumstances, when taken together, support a realistic likelihood of vindictiveness and therefore give rise to a presumption. We answer this question in the case at bar by holding that the defendants have made a showing sufficient to preclude us from reversing the lower court.

■ We begin by noting a set of predicate facts that *Goodwin* and the case at bar have in common. In both cases, of course, the prosecutor increased the charges against the defendants after the defendants had asserted their constitutional rights. In neither case did the defendants have any notice of this possibility: at no time had the prosecutors informed the defendants that they might face increased charges if they chose to go to trial. Finally, in neither *Goodwin* nor the case at bar had the defendants' own conduct after the initial charging decision given the government a legitimate reason to enhance the charges. These circumstances alone, of course, fail to support a realistic likelihood of prosecutorial vindictiveness; the Supreme Court's decision in *Goodwin* held as much. We note them because they combine with other circumstances in the case to suggest a retaliatory motivation.

Perhaps the most important of the circumstances peculiar to this case is the government's disparate treatment of the defendants who elected to go to trial and the defendants who elected to forego their trial rights. All of the defendants participated in the same demonstration and conducted themselves in the same manner. Yet the defendants who chose to go to trial faced two charges, whereas the other defendants confronted only one. This disparate treatment must give rise to a suspicion that the government discriminated among the defendants on the basis of their divergent decisions whether to exercise their right to trial. The facts in this case thus support, far more than did the facts in *Goodwin,* a finding of a realistic likelihood of prosecutorial vindictiveness.

The simplicity and clarity of both the facts and law underlying these prosecutions heightens the suspicion of prosecutorial vindictiveness. Government officials often make their initial charging decisions prior to gaining full knowledge or apprecia-

tion of the facts involved in a given case. In addition, officials often make charging decisions before analyzing thoroughly a case's legal complexities. The decision in *Goodwin* stemmed largely from the Supreme Court's understanding of these facts: the *Goodwin* Court recognized the frequency with which prosecutors must act on (and later compensate for) incomplete information or understanding. *See Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2492. But the case at bar appears to present few problems of this kind; not even the government contests the simplicity and straightforwardness of either the conduct involved in this case or the law relating to that conduct. Thus, the suspicion must grow that the prosecutor increased the charges not because of any further factual investigation or legal analysis, but because the defendants chose to exercise their constitutional right to trial.

The government's conduct *after* levelling the increased charges against the defendants also lends support to a finding of a realistic likelihood of vindictiveness. At the very beginning of the hearing on prosecutorial vindictiveness, the government moved to drop the charge that it had so recently added to each information. Perhaps the government official responsible for the prosecutions acted in good faith; perhaps he merely changed his mind a second time. But when we look at the government's action in the context of the entire case, we find this possibility difficult to accept. The remaining defendants certainly had good reason to think that the government dropped the additional charges in order to avoid the necessity of a *jury* trial, which the district court had granted to the defendants on the basis of the enhanced charges. We find in this prosecutorial action, viewed in context, a disturbing willingness to toy with the defendants, and we think that a lower court may take this kind of willingness into account in determining whether a presumption of vindictiveness will lie.

Finally, we take into consideration the government's motivation to act vindictively in this case. The *Goodwin* Court expressed doubt that in the run-of-the-mill pretrial situation, the prosecutor would have any reason to engage in vindictive behavior; the Court noted that defendants routinely assert procedural rights prior to trial and that prosecutors are unlikely to respond vindictively to this everyday practice. *See id.* at 381, 102 S.Ct. at 2492. But the prosecutor in this case confronted something other than routine invocations of procedural rights on the part of individual defendants. In this case, a large group of defendants threatened to go to trial on what the government considered "petty offenses." *See* Brief for Appellant at 3 n. 3. Many of these defendants had indicated their intention to proceed *pro se*. Many had determined to raise first amendment claims during the course of the trial. The government had a strong incentive to try to keep clear of this courtroom morass: it wished to avoid the annoyance and expense of prosecuting these minor cases at a potentially drawn-out trial. The Supreme Court previously had recognized that the government's interest in discouraging unexpected and burdensome assertions of legal rights may rise to a level that supports use of a presumption of vindictiveness. *See Blackledge*, 417 U.S. at 27, 94 S.Ct. at 2102. Although this governmental interest rarely rises to such a level in the pretrial context, *see Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2492, we view the governmental stake in the instant case as sufficiently significant to count toward use of the presumption.

■ The government asserts that assuming *arguendo* a presumption of vindictiveness can arise in a pretrial context, the various factors we have mentioned fail to support use of a presumption in the case at bar. Essentially, the government contends that no presumption will lie because the "routine and benign procedures necessitated by the magistrates' citation system" explain the increased charges. *See* Brief for Appellant at 23. According to the government, the prosecutor only sees the case once the defendant has decided to go to trial; thus, any decision he makes to in-

crease charges occurs in the course of routine prosecutorial review and in no way indicates vindictiveness. *See id.* at 21–24.

We reject this argument. The Supreme Court's decisions concerning vindictive prosecution have focused on the conduct of the government as a whole, rather than on the conduct or retributive sentiments of a single prosecutor. In *Thigpen v. Roberts*, 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984), for example, the Supreme Court stated that a presumption of vindictiveness "does not hinge on the continued involvement of a particular individual. A district attorney burdened with the retrial might be no less vindictive because he did not bring the initial prosecution. Indeed, *Blackledge* referred frequently to actions by 'the State,' rather than 'the prosecutor.'" *Id.* at 31, 104 S.Ct. at 2919 (citation omitted). Thus, the government cannot defeat the defendants' argument that a presumption should arise in this case merely by pointing out that two different individuals made the charging decisions. Neither can the government defeat the defendants' argument by noting that the first charging official was not a government attorney. The magistrates' citation system makes the police officer no less than the prosecutor a member of the prosecution team. We view their actions in conjunction, and we view the process of which they are a part as a whole. To do otherwise would be to ignore that the desire to punish defendants for exercising their legal rights arises more often from institutional than from personal wellsprings.

The government also argues that use of a presumption in this case will have dangerous policy consequences. The government contends that such a result will bind prosecutors to the charging decisions of arresting officers and thereby destroy or disable the magistrates' citation system. *See* Brief for Appellant at 36–40. We are not convinced. Even if our holding were to bind prosecutors to all charging decisions of arresting officers, we think the government would suffer no great loss. These charging decisions bind the government when defendants forego their right to trial; we fail to understand why the government believes it needs broad-ranging discretion to up the ante when defendants choose to exercise their trial rights. Moreover, a holding that the circumstances of this case support the use of a presumption will not bind prosecutors to all charging decisions of arresting officers. First, such a holding is limited to the precise circumstances of this case; in other cases, with different facts, the presumption may not lie. Second, even when a court uses a presumption, the government has the opportunity to rebut it; thus, the initial charging decision "binds" the government only to the extent that the government has no legitimate and articulable reason for changing that decision. Third, the government may be able to escape the presumption altogether by providing notice to the accused. In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court held that no vindictiveness occurred when a prosecutor informed a defendant during plea bargaining that he might face increased charges if he chose to go to trial: the Court stated that a prosecutor who "openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution ... did not violate the Due Process Clause." *See id.* at 365, 98 S.Ct. at 669. This holding suggests the possibility that in order to satisfy constitutional requirements, the government need only note on the Citation Form that the defendant will expose himself to enhanced charges if he elects to go to trial. For all of these reasons, we think the government's apprehension of the impending demise of the magistrates' citation system is greatly exaggerated.

The government's arguments thus fail to convince us that the circumstances of this case, when viewed in their entirety, cannot support a realistic likelihood of vindictiveness. Because the government has never attempted to rebut the presumption that arises when a realistic likelihood of vindictiveness exists, we cannot reverse the district court's finding of prosecutorial vindic-

tiveness under a clearly erroneous standard. Put simply, we have reviewed all of the evidence, and it has not left us with the "definite and firm conviction that a mistake has been committed." *See United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. at 541.

### B. *The Remedy*

■ The district court chose to remedy the governmental misconduct in this case by dismissing the informations. The government vehemently attacks this choice. As we noted earlier, we can reverse the district court's remedial order only if it constitutes an abuse of discretion. Because we cannot say that the choice of remedy in this case constitutes such an abuse, we reject the government's arguments and affirm the district court's order of dismissal.

The government essentially contends that when confronted with prosecutorial vindictiveness, a court has authority only to dismiss the additional, "tainted" charge. *See* Brief for Appellant at 41. In support of this claim, the government cites several cases in which courts have declined to order any relief other than dismissal of the vindictively motivated charge. *See United States v. Hollywood Motor Car Co.*, 646 F.2d 384, 388–89 (9th Cir.1981), *rev'd on other grounds*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982); *United States v. Andrews*, 633 F.2d 449, 455 (6th Cir. 1980). The government concludes that because in this case the prosecutors had already dismissed the additional charge, the district court should have held that "no relief at all was appropriate." Brief for Appellant at 42.

We decline to circumscribe so drastically the remedial authority of district courts in cases marked by prosecutorial vindictiveness. None of the cases that the government cites supports any such broad limitation. In those cases, appellate courts merely stated that dismissal of the additional charge constitutes the usual judicial remedy. *See Hollywood*, 646 F.2d at 388–89; *Andrews*, 633 F.2d at 455. In none of the cases cited by the government did the courts strike down a broader remedy ordered by a lower court. Case law thus fails to support the government's proposed approach. Perhaps more important, reason also fails to support the government's position. If in cases of vindictive prosecution the trial court judge may only dismiss the additional charge, the prosecutor will have nothing to lose by acting vindictively. The government's position, if accepted, would remove the deterrent effect of the doctrine of prosecutorial vindictiveness—a doctrine which the Supreme Court *designed* to be largely prophylactic in nature, *see Blackledge*, 417 U.S. at 26, 94 S.Ct. at 2101. We will not countenance the government's attempt to so vitiate the prohibition against prosecutorial vindictiveness.

Given the trial court's appropriately broad authority to remedy prosecutorial vindictiveness, we cannot say that the district court's decision to dismiss the informations in this case constitutes an abuse of discretion. We note that the remedy is extreme and that the district court judge had no obligation to impose it. *Cf. Hollywood*, 646 F.2d at 389 (stating that the actions of the prosecutor were not "sufficient to *require* the invocation of such an extreme sanction as dismissal of the original, 'untainted' ... charges" (emphasis added)). The deterrent effect of the rule will remain even if judges resort to this remedy only in a minority of cases. We therefore do not encourage routine imposition of this broad remedy; indeed, we counsel lower courts to inspect closely both factual circumstances and remedial alternatives before dismissing entire informations. But we uphold the authority of the district court judge to impose that remedy in this case. The judge clearly believed that the circumstances of this case demanded a strong response and that the most appropriate response available was dismissal of the informations. Given the undisputed facts that lie at the base of this appeal, we cannot say the judge acted impermissibly. We therefore affirm.

*It is so ordered.*