931 F.2d 888
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Thomas A. MULDOON, Defendant-Appellee.
 No. 90-5057.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1990.
Decided April 30, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-90-96-A)
 Albert James Ahern, Jr., Alexandria, Va., for appellant.
 Jack Hanly, Assistant United States Attorney, Alexandria, Va. (Argued), for appellee; Henry E. Hudson, United States Attorney, Joseph J. Aronica, Assistant United States Attorney, William G. Otis, Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 VACATED AND REMANDED.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The United States appeals the dismissal of an indictment against Thomas E. Muldoon that the district court believed to be tainted by prosecutorial vindictiveness. Because prosecutors may use threats of increased charges in the give and take of plea negotiations and may subsequently carry out the threats when the negotiations fail, we vacate the district court's judgment and remand for reinstatement of the indictment.
 
 
 2
 * Wiretaps established probable cause that Muldoon offered bribes and trafficked in government information to help defense contractors obtain government contracts. The taps disclosed that Muldoon paid money to Jack Sherman, a Marine Corps employee, to help the Lee Technical Corporation (LTC) obtain contracts related to the Data Link Emulator (DLE) and to modify an existing contract to provide technical support to the Marine Corps and the Navy in their procurement of the Advanced Tactical Air Command Central (ATACC). Lee Technical was not a competitor for the ATACC contract.
 
 
 3
 Muldoon also talked about selling classified information to Litton Data Systems and Norden Systems, which were both competing for the ATACC contract. Muldoon obtained this information from Mark C. Saunders, and he paid Saunders half the money the defense contractors paid him. Saunders got the information from George H. Stone, a government employee.
 
 
 4
 The United States offered to dispose of all Muldoon's alleged crimes through a plea agreement. The proposal required Muldoon to plead guilty to two counts of a pending indictment charging bribery of Sherman and interstate travel in carrying on the bribery in violation of 18 U.S.C. Secs. 201 and 1952. The proposal also contemplated that Muldoon would plead guilty to an information, not yet filed, charging conspiracy to defraud the United States in violation of Sec. 371 and converting government property in violation of Sec. 641. The proposed information was based on Muldoon's activities with Saunders and Stone to obtain data for Litton and Norden and pertained to the government's views about the proposals and bids submitted by all companies that sought the ATACC contract.
 
 
 5
 Muldoon rejected the government's proposed plea agreement by insisting on a condition the government would not accept. He was convicted on the pending indictment for bribing Sherman to help LTC, interstate travel to carry on bribery, and conspiracy to commit these offenses, and he appealed.
 
 
 6
 The government subsequently indicted Muldoon, charging that he conspired to defraud the United States and convert its property in concert with Saunders and Stone to help Litton and Norden get the ATACC contract. The conspiracy count in the indictment generally followed the allegations of the information mentioned in the proposed plea agreement. Muldoon moved to dismiss this indictment, alleging that it was procured by prosecutorial vindictiveness because he had rejected the plea agreement, gone to trial, and appealed his conviction for bribing Sherman. Muldoon supported his motion with an affidavit, but the government did not file an affidavit in rebuttal.
 
 
 7
 The district court stated that there was no showing of actual vindictiveness, but it found a presumption of prosecutorial "vindictiveness for and retaliating against this defendant for going to trial." The court was less convinced that the government was retaliating for the appeal, but it ruled, "certainly ... the appearance of this is that there is a realistic likelihood of vindictiveness." It held that the record did not refute the presumption, and it denied a motion for reconsideration supplemented by the prosecutor's affidavit, which chronicled the plea discussions.
 
 
 8
 Muldoon contends that the record before the district court at the time of initial ruling sustained its motion to dismiss and that the court did not abuse its discretion by denying the motion for reconsideration. The government argues that the record was sufficient to show that the indictment should not have been dismissed.
 
 II
 
 9
 Prosecutorial vindictiveness deprives an accused of due process of law by retaliating for the exercise of a constitutional or statutory right. See United States v. Goodwin, 457 U.S. 368, 378 (1982). In the absence of proof of actual vindictiveness, the accused may establish a rebuttable presumption of vindictiveness by showing that "a reasonable likelihood of vindictiveness exists." Goodwin, 457 U.S. at 373. A presumption of vindictiveness, however, does not arise from plea negotiations when the prosecutor threatens to bring additional charges if the accused refuses to plead guilty to pending charges. The Due Process Clause does not bar the prosecutor from carrying out his threat. Bordenkircher v. Hayes, 434 U.S. 357 (1978).
 
 
 10
 Quite apart from the government's untimely proffer of evidence, the record before the district court is sufficient to establish that Bordenkircher governs this case. Muldoon's affidavit filed with his motion to dismiss acknowledges that the prosecutor told him during plea negotiations before the trial on the pending indictment that if he did not accept the proposed plea agreement he would be "subject to multiple counts or separate indictments." The principles explained in Bordenkircher apply to Muldoon's situation. In "the 'give-and-take' of plea bargaining, there is no ... element of ... retaliation so long as the accused is free to accept or reject the prosecution's offer." Bordenkircher, 434 U.S. at 363.
 
 
 11
 Muldoon argues that notwithstanding Bordenkircher the second indictment should be dismissed because the government split one alleged crime into two parts. He points out that Sherman helped LTC in connection with the ATACC contract and that some of the same coconspirators are named in each indictment.
 
 
 12
 A comparison of the two indictments shows that the similarities Muldoon emphasizes are superficial. Both indictments allege conspiracies to defraud the government, but the schemes to accomplish the fraud were different. The principal substantive crimes alleged in each indictment are different: in the first, bribery in violation of 18 U.S.C. Sec. 201; in the second, conversion in violation of 18 U.S.C. Sec. 641. The codefendants are different. The principal coconspirators are different: Sherman in the first; Saunders and Stone in the second. The defense contractors and the government contracts they sought differ.
 
 
 13
 There can be no doubt that Muldoon could be tried for his actions alleged in the second indictment. A grand jury found probable cause to indict him. Bordenkircher provides authority for disposing of Muldoon's argument:
 
 
 14
 In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."
 
 
 15
 434 U.S. at 364 (citation and footnote omitted). The prosecutor was not required to join these two separate schemes to corrupt the Defense Department's procurement system. The danger of confusing evidence about one scheme with evidence about the other presented a risk that neither the government nor Muldoon's codefendants should have to bear.
 
 
 16
 Muldoon also protests that since the government possessed evidence of the crimes alleged in the second indictment before the trial of the first indictment, the prosecutor's decision to obtain separate indictments was vindictive.
 
 
 17
 Again Bordenkircher refutes Muldoon's argument. In that case the Court noted the prosecutor was in possession of the evidence needed to obtain the second indictment at the time of the original indictment. Nevertheless, this circumstance did not dictate dismissal of the second indictment.
 
 
 18
 Blackledge v. Perry, 417 U.S. 21 (1974), and United States v. Meyer, 810 F.2d 1242 (D.C.Cir.1987), on which Muldoon relies, did not involve threats of additional charges made during plea negotiations. Bordenkircher distinguishes Blackledge, 434 U.S. at 362-63, and Meyer distinguishes Bordenkircher, 810 F.2d at 1248. Neither Blackledge nor Meyer supports affirmance of the district court's judgment.
 
 
 19
 The district court rightly held that Muldoon had not proved actual prosecutorial vindictiveness. Bordenkircher explains why Muldoon cannot establish a presumption of prosecutorial vindictiveness. The judgment of the district court is vacated, and the case is remanded with directions to reinstate the indictment.
 
 
 20
 SPROUSE, Circuit Judge, and WARD, Senior District Judge, joined.