HENDERSON, Circuit Judge,
concurring in Part VI:
I write separately to express my view that the aftermath of Slatten’s mandamus petition did not, and could not, give rise to a realistic likelihood of prosecutorial vindictiveness. United States v. Meyer, 810 F.2d 1242, 1246 (D.C. Cir. 1987). Although the majority notes that “the extraordinary mandamus grant here, followed by a rather sharply-worded criticism in denying reconsideration, in a high-profile prosecution with international ramifications no less, had [great] potential to give rise to a vindictive motive,” Maj Op. 799-800, that description fails to account for our Court’s own mistake leading to the mandamus petition (and its aftermath) in the first place.
The Nisur Square attack took place on September 16, 2007. Under MEJA, then, the government had until September 16, 2012 to indict (or reindict) Slatten on a non-capital offense. 18 U.S.C. § 3282(a).
On December 4, 2008, a grand jury indicted Slatten and his co-defendants on, inter alia, multiple manslaughter charges. One year later, on December 31, 2009, the district court dismissed the indictment based on the government’s violation of Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). See United States v. Slough, 677 F.Supp.2d 112 (D.D.C. 2009). Although the government had earlier moved to voluntarily dismiss *821 Slatten’s indictment, the district court expressly denied that request as moot given its simultaneous dismissal of all charges against all defendants.[1] Id. at 166 n.67 (“Because the court dismisses the indictment against all of the defendants, including defendant Slatten, it denies as moot the government’s motion for leave to dismiss the indictment against defendant Slatten without prejudice.”).
The government appealed the dismissal. Our Court reversed the district court, concluding that Kastigar required it to determine with greater specificity the taint, if any, each defendant’s compelled statements had on the grand jury evidence. United States v. Slough, 641 F.3d 544, 550-55 (D.C. Cir. 2011). Importantly, however, it did so assuming—mistakenly—that “the government itself moved to dismiss the indictment against Nicholas Slatten, without prejudice to possible later re-indictment, and the district court’s grant of the motion has taken Slatten out of the case for now.” Id. at 547 (emphasis added). Stated differently, it did not overturn the district court’s dismissal of the manslaughter charges against Slatten because it incorrectly believed that the district court had granted the government’s motion to dismiss and therefore Slatten was already out of the case. See id. (reversing and remanding “as to four of the defendants”). Slatten’s co-defendants unsuccessfully petitioned for certiorari and, because of that delay, the Slough mandate did not issue until June 5, 2012.
Over one year later, on October 17, 2013, a grand jury reindicted Slatten and his co-defendants on, inter alia, multiple manslaughter charges. JA 314. Although the superseding indictment issued after September 16, 2012—the date MEJA’s five-year statute of limitations for non-capital offenses was set to expire—it related back to the filing of the original indictment for statute of limitations purposes because it did not broaden the original indictment. See, e.g., United States v. Grady, 544 F.2d 598, 602-03 (2d Cir. 1976) (“Since the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time while the first indictment is still validly pending, if and only if it does not broaden the charges made in the first indictment, cannot be barred by the statute of limitations.” (footnote omitted)); United States v. Yielding, 657 F.3d 688, 703 (8th Cir. 2011) (“For limitations purposes, ‘a superseding indictment filed while the original indictment is validly pending relates back to the time of filing of the original indictment if it does not substantially broaden or amend the original charges.’ ”); JA 323. The critical question regarding Slatten, however, was whether Slatten had remained in the case and was therefore covered by the relation back. See Opposition to 'Slatten’s Motion to Dismiss Superseding Indictment on Statute of Limitations Grounds, United States v. Slatten, et al., Docket No. 1:08-cr-00360-RCL, Doc. 352 (November 29, 2013). On the one hand, the district court’s December 2009 order manifested that Slatten’s dismissal was based on the same Kastigar/Garrity rationale applicable to his co-defendants, the rationale we rejected in reversing the dis *822 missal. On the other hand, our Court declared (incorrectly) that Slatten was no longer in the case because it mistakenly believed the district court had granted the government’s motion to dismiss Slatten’s indictment in its December 2009 order. Slough, 641 F.3d at 547.
Once the superseding indictment against him issued, Slatten moved to dismiss it on the ground that he was no longer in the case based on our Court’s Slough opinion. The district court—a successor judge— denied Slatten’s motion to dismiss. In doing so, it expressly discussed the mistake caused by our Slough language. See Memorandum Opinion, United States v. Slatten, No. 1:08-cr-00360-RCL, Doc. 388 (February 18, 2014). It noted that the “only ambiguity in [Slough] was the judgment appealed from,” pointing out that “[ejven though the Government conceded that Slatten’s indictment was deficient, [the original judge] found that it was deficient on broader grounds than the Government sought in its own motion” and, thus, “[i]t was those broader grounds that the Government appealed from as to all five defendants including Slatten.” Id. at 2-3 (emphasis added). Attempting to adjust to our Court’s error, the district court reasoned that the “letter” of the district court’s December 2009 order and the “spirit” of Slough’s mandate established that Slatten remained a defendant and therefore the non-capital MEJA charges against Slatten remained timely. Id. at 2-4.
Following the district court’s decision, Slatten petitioned this Court for mandamus relief “to prevent the district court from expanding the scope of Slough.” See Emergency Petition for Writ of Mandamus, In re Nicholas Abram Slatten, Case No. 14-3007 (D.C. Cir. March 6, 2014). In reviewing that petition, our Court again failed to focus on. the relevant portion of the December 2009 dismissal order (which expressly denied the government’s motion to voluntarily dismiss Slatten) and instead granted Slatten’s petition, stating that the “mandate reversing and remanding [to] the district court clearly applied only to Slatten’s four co-defendants” because the “government conceded to us, both in its briefs and at oral argument, that Slatten’s indictment was infirm.” See Per Curiam Order, In re Nicholas Abram Slatten, No. 14-3007 (D.C. Cir. April 7, 2014).
Given the mandamus’s limitation on what charges could (and could not) be brought against Slatten, the government pressed the issue by petitioning for rehearing. See Petition, In re Nicholas Abram Slatten, No. 14-3007 (D.C. Cir. April 17, 2014). In its petition, the government expressly drew the Court’s attention to the fact that “[t]he [Slough] opinion incorrectly stated that the district court granted the. government’s motion to dismiss the indictment .as to Slatten” and that “the record compels the conclusion ... that this Court in Slough reversed the dismissal order with respect to all five defendants.” Id. at 1-2 (emphasis added).
On April 18, 2014, our Court—for the first time—recognized that it “erred in stating that the district court’s dismissal as to Slatten had come in response to the Government’s own motion to dismiss, rather than to Slatten’s motion.” See Per Curiam Order, In re Nicholas Abram Slatten, No. 14-3007 (D.C. Cir. April 18, 2014). Nevertheless, it denied the government’s petition, declaring that “the dispositional posture following [Slough] was unaffected” by the error because “Slatten’s indictment had been dismissed, and we had reversed only as to the other four.” Id at 1. It appears the error was seen as harmless because, if Slatten had been within the scope of the mandate, the district court— which, in its December 2009 order, had denied as moot the government’s motion to *823 dismiss Slatten—would have then granted that motion, leaving the same scenario, that is, Slatten would no longer be a defendant. Id.[2]
I believe our Court incorrectly—albeit in good faith—contributed to the Hobson’s choice facing the government at that point. First, and critically, MEJA’s statute-of-limitations clock would not have run on any non-capital offense had Slatten remained a defendant throughout the Slough appeal and remand because, to repeat, “a superseding indictment brought at any time while the first indictment is still validly pending, if ... it does not broaden the charges made in the first indictment, cannot be barred by the statute of limitations.” [3] Grady, 544 F.2d at 601-02. “[T]he dispositional posture following [Slough]," then, was anything but “unaffected” by the misreading of the December 2009 dismissal order; it disabled the government from filing any non-capital charge against Slat-ten in the superseding indictment. Moreover, our Slough language left the government uncertain regarding Slatten’s status. 641 F.3d at 547. Indeed, on July 25, 2012— two months before MEJA’s five-year statute of limitations clock ran—the government announced it intended to seek a superseding indictment covering all five Slough defendants (including Slatten), indicating no recognition of the need to omit Slatten on all non-capital counts. It took almost the next two years for it to recognize definitively that Slatten could not be indicted on a non-capital offense. Although the wiser move would have been for the government to reindict Slatten immediately upon remand, I believe our Court’s mistaken reading of the December 2009 order contributed to the government’s failure to do so.
The government faced a forced choice— indict Slatten on the only charge unaffected by MEJA’s five-year deadline or completely forego prosecution of him. “[These] circumstances, when taken together,” plainly fail to “support a realistic likelihood of vindictiveness.” Meyer, 810 F.2d at 1246.

. In its motion to dismiss Slatten, the government had conceded that "key testimony used to indict defendant Nicholas Slatten resulted from the exposure of grand jury witnesses to his compelled statements.” See United States v. Slough, 677 F.Supp.2d 112 n.2 (D.D.C. 2009). Subsequently, all five defendants moved to dismiss the joint indictment and the district court, identifying improper evidentia-ry uses of all defendants’ Garrity statements in violation of Kastigar, id. at. 144-66, 92 S.Ct. 1653, granted defendants’ motion to dismiss and, accordingly, denied the government’s motion to dismiss Slatten as moot. Id. at 166 n.67, 92 S.Ct. 1653.

. The record "dispositional posture,” however, was plainly affected: based on the district court record, supra 821 n. 1, the reversal applied to all five defendants.

. In denying the government’s rehearing petition, our Court minimized this point by noting that the government had originally moved to voluntarily dismiss Slatten’s indictment and the district court had simply denied that motion "as moot." See Per Curiam Order, In re Nicholas Abram Slatten, No. 14-3007 (D.C. Cir. April 18, 2014) (emphasis in Per Curiam Order). Apparently, the thought was that, if Slatten had remained in the case through remand, the government could have simply renewed its motion to dismiss the original indictment against Slatten. But such a dismissal.—leaving aside its counterintuitive nature (the original indictment had to remain in place for the superseding indictment’s "relation back”)—would have required (at least) leave of the court. See Fed. R. Crim. P. 48(a) ("The government may, with leave of court, dismiss an indictment, information, or complaint.” (emphasis added)); Fed. R. Crim. P. 48(a) advisory committee’s note to 1944 adoption ("The first sentence of this rule will change existing law. The common-law rule that the public prosecutor may enter a nolle prosequi in his discretion, without any action by the court, prevails in the Federal courts ... This provision will permit the filing of a nolle prosequi only by leave of court.”); United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975).