## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58296-1-II |
| Respondent, | |
| v. | |
| MATTHEW MICHAEL MERZ, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Matthew M. Merz appeals his conviction for computer trespass in the first degree and electronic data theft. He argues that there is insufficient evidence to support his convictions because the State did not prove these acts occurred in the State of Washington. Merz further argues that the mandatory victim penalty assessment (VPA), deoxyribonucleic acid (DNA) collection fee, and $250 jury demand fee must be stricken. In his statement of additional grounds for review (SAG), Merz raises multiple claims. Finding no error affecting Merz's convictions, we affirm Merz's convictions but remand with instructions to strike the VPA, DNA collection fee, and jury demand fee.

FACTS

I.  FACTUAL BACKGROUND

Merz is a resident of Kalama, Washington. Merz took office as a Kalama City Council member for a four-year term in 2020. When Merz and his colleagues first took office, the city clerk/treasurer, Constance McMaster, issued them laptops and an assigned e-mail address and

password that were unique to them. The format of that password was CC2020PX: CC for city council, 2020 for the year the council member took office, P for position, and X was each elected official's position number.

On August 31, 2021, Christopher Jensen sent threatening Facebook messages to Merz, which suggested to him that Jensen had some mental health issues. Merz blocked Jensen when he began receiving text messages and e-mails threatening his life. Jensen called Merz at 2:00 AM one morning, which concerned Merz. Then, on December 26, Jensen showed up at Merz's uncle's house, which was next door to Merz's own house. Merz became aware that Jensen had been in Kalama since December 15 and that law enforcement and the city administrator had been aware of his presence, yet they failed to warn him.

At trial, Merz testified that he needed to know what was going on with regard to Jensen's presence in Kalama. To gain information, Merz deduced his fellow council member, Jonathan Stanfill's, e-mail password by reasoning that each council member's account had similar log-in information.[1] Merz logged into Stanfill's e-mail account without Stanfill's authorization. He chose Stanfill's city e-mail account because Stanfill acted as the liaison between the city council and the police department. Merz was "looking for information on individuals targeting him." Rep. of Proc. (RP) at 115. He found communication pertaining to Jensen, as well as a folder titled "Police Committee." RP at 150. He admitted to downloading information from Stanfill's account. Merz believed that Stanfill and the police department created a new committee and a new position in the city without the city council's or the public's knowledge. He believed he had discovered multiple crimes and reported his information to the Cowlitz County Sheriff's Office.

---

[1] There are conflicting reports as to whether Merz guessed or knew what he was doing. Deputy James Hanberry and Detective Troy Lee said in an interview with Merz that Merz guessed it, but Merz says that he knew what he was doing.

2

On January 3, 2022, Merz spoke with Detective James Hanberry to discuss the e-mails he saw. Hanberry asked Merz to come to the sheriff's office and provide a written statement, which he did. Hanberry wrote a report that included copies of the e-mails Merz saw and downloaded, and forwarded the report and its attachments to Cowlitz County detectives.

On January 4, 2022, Detective Troy Lee began investigating. Lee felt that the allegations of unlawfully accessing an e-mail account and extracting electronic data files warranted further investigation. On January 7, Lee contacted Stanfill and informed him of the information and e-mails in the report, and sought to obtain more information from Stanfill. Lee later met with Stanfill in person, where Stanfill provided him with an Internet Protocol (IP) address. Lee met with Merz and read him his *Miranda*[2] rights prior to discussing the matter. Merz signed a waiver that included the *Miranda* warnings about his constitutional rights. After speaking with Merz about what Merz uncovered in Stanfill's e-mail, Lee advised Merz that he was under arrest. The State charged Merz with computer trespass in the first degree and electronic data theft.

II.   TRIAL

During the State's direct examination of Stanfill, it established that each council member's computer and account were given by the city of Kalama for the purpose of conducting city business. The computer and account were considered property of the city of Kalama. Stanfill noted his account was accessed by an unfamiliar IP address four times on January 1 and January 2. During the State's direct examination of McMaster it once again established that the accounts were city of Kalama's accounts.

After the State rested its case, defense counsel moved for a directed verdict, arguing that there was no showing that the acts occurred in the State of Washington. Defense counsel noted

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

that there was no evidence admitted from any Internet provider establishing the location or the IP address. The State responded that the accounts were city of Kalama controlled accounts, implying that they are within the State of Washington. The trial court rejected defense counsel's motion because the e-mail accounts that were accessed were city of Kalama accounts, therefore satisfying the jurisdictional requirement. Merz does not assign error to the trial court's denial of his motion.

Merz testified. Defense counsel asked him where he lived. Merz replied, "Kalama, Washington" RP at 139.

The State proposed a definition of "without authorization." Defense counsel proposed a definition of "data." The court accepted both definitions. The court asked both parties if there were any concerns about any of the other proposed instructions; neither party raised a concern.

Instruction 6, regarding computer trespass in the first degree reads as follows:

> To convict the defendant of the crime of Computer Trespass in the First Degree, each of the following four elements of the crime must be proved beyond a reasonable doubt:
> (1) On or about January 2, 2022, the defendant, intentionally gained access to a computer system or electronic database of another;
> (2) That the defendant gained access without authorization;
> (3) The access involves a computer or database maintained by a government agency; and
> *(4) That this act occurred in the State of Washington*

Clerk's Papers (CP) at 26 (emphasis added).

Instruction 10 regarding electronic data theft read as follows:

> To convict the defendant of the crime of Electronic Data Theft, each of the following five elements of the crime must be proved beyond a reasonable doubt:
> (1) On January 2, 2022, the defendant, intentionally obtained electronic data;
> (2) That the defendant obtained the data without authorization;
> (3) That the defendant had no reasonable grounds to believe that he had authorization to obtain the data;
> (4) That the defendant acted with intent to wrongfully control, gain access to, or obtain electronic data; and
> *(5) That this act occurred in the State of Washington.*

CP at 30 (emphasis added).

During the State's closing arguments, the State reiterated several pieces of evidence that were presented during the trial. The State argued that both acts occurred in the state of Washington because "Stanfill's city email account is a city email account belonging to the city of Kalama, which is within the State of Washington." RP at 180.

The jury ultimately found Merz guilty of the crimes of computer trespass in the first degree and electronic data theft. The trial court found him indigent. Nevertheless, it imposed a $500 VPA, a $100 DNA collection fee, and a $250 jury demand fee as legal financial obligations (LFOs).

Merz appeals his convictions.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Merz argues that there was insufficient evidence for a jury to find that his acts occurred in the State of Washington. We disagree.

#### A. Standard of Review

Due process of law requires that the State prove every element of the charged crime beyond a reasonable doubt. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). Challenges to sufficiency of the evidence are questions of constitutional law that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

When evaluating whether evidence is sufficient to support a conviction, we must determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The evidence must be viewed in the light most favorable to the State and interpreted most strongly against the defendant. *Id.*

Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

"A claim of insufficiency [of evidence] admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. We do not review credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

B.      Legal Principles

Computer trespass in the first degree occurs when a person intentionally gains access without authorization to a computer system or electronic database of another and the access is made with the intent to commit another crime or the violation involves a computer or database maintained by a government agency. RCW 9A.90.040(1).

Electronic data theft occurs when a person intentionally and without authorization, and without reasonable grounds to believe that he or she has such authorization, "obtains any electronic data with the intent . . . to [d]evise or execute any scheme to defraud, deceive, extort, or commit any other crime in violation of a state law . . . or to [w]rongly control, gain access to, or obtain money, property, or electronic data." RCW 9A.90.100(1).

C.      Sufficient Evidence Exists to Support Merz's Convictions

The core of Merz's argument is that the State failed to prove the acts occurred in the state of Washington. We disagree.

Council member Stanfill, the user of the account that Merz accessed without authority, testified that each council member's computer and account were given by the city of Kalama for the purpose of conducting city business and that the computer and account were considered property of the city of Kalama. McMaster also testified that the accounts were city of Kalama accounts. Indeed, Merz himself testified that Kalama is located within the state of Washington.

Additionally, the evidence showed that Merz logged into Stanfill's e-mail account on January 2. Merz then met with Hanberry in person in Washington on January 3. A reasonable inference from the evidence is that Merz was in the state of Washington at the time he accessed Stanfill's city e-mail account without authorization or permission.

Based on the evidence and all reasonable inferences from the evidence, sufficient evidence exists for the jury to find that Merz committed computer trespass in the first degree and electronic data theft within the state of Washington. The State met its burden of proof.

II.     LFOs

Merz next argues that we should remand to the trial court to strike the VPA, the DNA collection fee, and jury demand fee based on recent legislative changes and because he is indigent. The State concedes that we should remand for the trial court to strike the VPA, DNA collection fee, and jury demand fee.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the crime victim penalty assessment on indigent defendants. *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, *pet. for rev. filed*, 102378-2 (2023). The legislature also amended RCW 43.43.7541 to require waiver of a DNA collection fee imposed before July 1, 2023 upon the defendant's motion. LAWS of 2023, ch. 449, § 4. RCW 10.46.190 explains that "[t]he court shall not order a defendant to pay costs . . . if the court finds that the person at the time of sentencing is indigent." LAWS OF 2022, ch. 260, § 20. Here, the court found Merz indigent.

We accept the State's concession and remand for the trial court to strike the VPA, DNA collection fee, and jury demand fee.

III.    SAG ISSUES

In his SAG, Merz raises numerous arguments that can be combined into five issues: prosecutorial misconduct, ineffective assistance of counsel, duress, entrapment, and prosecutorial vindictiveness.[3]  We find no error.

A.    Prosecutorial Misconduct

Merz claims that the Cowlitz County Prosecuting Attorney's Office engaged in prosecutorial misconduct in numerous ways.  Specifically, Merz contends that the prosecuting attorney's office withheld evidence to protect the purported wrongdoing of fellow council member Stanfill and the police chief who created a taskforce.  He appears to argue that he provided public records of "deleterious activity" by council member Stanfill and police chief Herrera but the prosecuting attorney's office did nothing about it.  SAG 3.  He also contends that he provided evidence that an individual within the city of Kalama deleted a death threat sent to his city e-mail. Merz further contends that the prosecuting attorney's office and the Cowlitz County Sheriff's Office withheld this evidence to conceal a criminal conspiracy by individuals within the city of Kalama.  Merz also claims that the sheriff's office, prosecuting attorney's office, Public Defense Attorney Daniel Counsel, Cowlitz County Superior Court, and the jury ignored or were intentionally not made aware of Merz's rights under the Public Records Act located at chapter 42.56 RCW, the Intent of the Cybercrimes Act at RCW 9A.90.010, and other sections of law governing transparency, accountability, and oversight in government.  Merz further claims that the

---

[3] Merz also appears to allege that Cowlitz County Jail Director, Marin Fox, maliciously and recklessly endangered his life within the Cowlitz County Jail to intimidate him.  This argument is not based on our record and would be more properly brought in a personal restraint petition.  *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

prosecuting attorney's office wrongfully created a right of privacy for Stanfill. Presumably, Merz intends that such allegations, if true, would provide a defense to his convictions.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The defendant bears the burden of proving that there is a reasonable probability that a reasonable juror's judgment would have been affected by the withheld evidence. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). However, if a defendant is raising prosecutorial misconduct for the first time on appeal, an error is waived unless the defendant establishes that the "misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. While some of Merz's arguments were raised below and some are raised for the first time on appeal, his arguments all fail because he cannot meet even the lowest standard of prejudice to warrant relief. Merz fails to demonstrate prejudice affecting the outcome of his case. There is nothing in the record to suggest that Merz's allegations of prosecutorial misconduct would have a reasonable probability of undermining confidence in the jury's verdict.

Next, Merz alleges that the prosecuting attorney's office falsely claimed that record requests are required of elected officials and that their false claims were refuted by McMaster, the city clerk. However, McMaster actually testified that council members have access to information regarding activities that they are performing and that do not have to go through a formal public records request to gain that information. Nothing in the record suggests that Merz's initial foray into Stanfill's e-mail account was for actions related to his activities as a council member. Merz admits that he accessed Stanfill's e-mail account without authorization because of the private

matter relating to his stalker being in the city of Kalama and his need to find out "what was going on." RP at 149. We do not find that the prosecuting attorney's office made an improper statement.

Merz also claims that state law supports that he cannot be prosecuted for failing to follow public record request procedures that did not exist, were not provided to him, and were not posted publicly by the city of Kalama. But the record shows that Merz was not prosecuted for failing to follow public record request procedures. Rather, Merz was prosecuted because, as he admits, he used Stanfill's username and password to access Stanfill's city e-mail account without any authority or permission.

Merz's prosecutorial misconduct arguments fail.

B. Ineffective Assistance of Counsel

Merz next claims ineffective assistance of counsel. Specifically, Merz alleges that defense counsel (1) refused to request withheld exculpatory evidence from the State; (2) failed to submit evidence Merz provided; (3) failed to cite relevant state laws Merz provided; (4) failed to place those same relevant laws into the jury instructions; (5) failed to address, at trial, claims in a witness's report; (6) failed to address false statements made by the police chief; (7) confessed that Merz did not receive fair treatment; (8) failed to request a change of venue; and (9) failed to submit a motion to vacate.

We review claims of ineffective assistance of counsel de novo. *State v. Vazquez*, 198 Wn.2d 239, 249, 494 P.3d 424 (2021). To establish ineffective assistance of counsel, a defendant must show that their attorney's performance was deficient and prejudicial. *Id.* at 247-48. An ineffective assistance of counsel claim fails if the defendant fails to establish either deficient performance or prejudice. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011); *see also Vazquez*, 198 Wn.2d at 247.

10

There is a strong presumption that counsel is effective. *Vazquez*, 198 Wn.2d at 247. "The defendant has the burden to show that defense counsel's performance was deficient based on the trial court record." *Id.* at 248. "Specifically, 'the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Id.* at 248 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). "Defense counsel's performance is not deficient if it is a 'legitimate trial strategy or tactic.'" *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have been different absent counsel's deficient performance. *McFarland*, 127 Wn.2d at 337; *see also Vazquez*, 198 Wn.2d at 267.

With regard to claims 1 through 6, Merz relies on evidence beyond our record. We do not know what conversations he and defense counsel may have had. Arguments that rely on evidence outside our record are best raised in a personal restraint petition (PRP). *McFarland*, 127 Wn.2d at 335.

With regard to claim 7, defense counsel's statement about his opinion on Merz's fair treatment would not form the basis for an ineffective assistance of counsel claim. Merz claims that counsel confessed that Merz would not receive a fair trial. According to the e-mail thread Merz shared in his SAG, Merz was upset that counsel did not file a motion to vacate within the accepted window. But also in the thread, counsel tells Merz that counsel researched the standard and decided that the claims Merz wanted to put forth would be more appropriate to raise on the appellate level. The thread continues with Merz informing counsel that he no longer needs counsel's assistance. Counsel then retorts that an elected official (presumably the judge) would

not set aside a jury verdict, and would instead, "craft a carefully worded decision as to why the jury came to a reasonable decision." SAG at 46. Additionally, counsel believes that a party distant from the local population, such as an appellate court outside of Cowlitz County, would be a better forum for Merz. In fact, counsel states that he is acting in what he believes is Merz's best interests. Again, there is a strong presumption that counsel is effective. *Vazquez*, 198 Wn.2d at 247. Merz fails to rebut that presumption. We do not find that counsel's expression of his personal beliefs, or his explanation of his tactics amounts to ineffective assistance of counsel.

With regard to claims 8 and 9, again, we presume counsel is effective. Merz argues that a change of venue would have been justified because of the articles in the local newspaper that would have influenced the court and the jury.

Common criteria or factors generally utilized by courts in determining the propriety of an order granting or denying a motion for change of venue based on alleged prejudicial pretrial publicity are:

> (1) [T]he inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.

*State v. Crudup*, 11 Wn. App. 583, 587, 524 P.2d 479 (1974).

As stated above, "[d]efense counsel's performance is not deficient if it is a 'legitimate trial strategy or tactic.'" *Bertrand*, 3 Wn.3d at 128 (quoting *Kyllo*, 166 Wn.2d at 863). Moreover, for ineffective assistance of counsel claims based on an attorney's failure to take a certain action, the

defendant must show that the action likely would have been successful. *See Emery*, 174 Wn.2d at 755 (requiring showing that severance motion likely would have been granted).

Merz fails to show that a motion to change venue would have been successful. Defense counsel's decision to not file a motion to change venue is a tactical decision, and here, the decision to not bring such a motion did not amount to deficient performance.

Similarly, Merz's contention that defense counsel was deficient for failing to file a motion to vacate also fails because Merz does not show that such motion would have been successful.

Based on the above, we hold that Merz's ineffective assistance of counsel claim fails.

C. Duress

Next, Merz accuses the prosecuting attorney's office and McMaster of making false claims that he did not submit a record request for e-mails from the city e-mail account utilized by Stanfill. Merz also claims he was under duress when he committed computer trespass in the first degree because he had already reached out to local law enforcement who failed to ensure him protection or assistance.

To support his claim, Merz references evidence outside of the record. As discussed above, if a defendant wishes to raise issues that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a PRP. *McFarland*, 127 Wn.2d at 335.

D. Entrapment

Merz claims entrapment. He claims that the sheriff's office and prosecuting attorney's office engaged in entrapment together with malicious and selective prosecution thus violating equal protection of the laws.

Entrapment is a defense when (1) "[t]he criminal design originated in the mind of law enforcement officials, or any person acting under their direction," and (2) "[t]he actor was lured

or induced to commit a crime which the actor had not otherwise intended to commit." RCW 9A.16.070(1). Entrapment is not established by a mere showing that law enforcement simply allowed an actor the opportunity to commit a crime. RCW 9A.16.070(2). We find nothing in the record to suggest that the sheriff's office lured or entrapped Merz to commit computer trespass in the first degree and electronic data theft.

Additionally, the prosecuting attorneys of the State of Washington have discretion as to whether to file criminal charges and what charges are available to file. The most important power of the prosecutor's office is that it may consider individual facts and circumstances when deciding whether to enforce criminal laws and that it may seek individualized justice. *State v. Rice*, 174 Wn.2d 884, 901-02, 279 P.3d 849 (2012).

E.       Prosecutorial Vindictiveness

Finally, Merz claims prosecutorial vindictiveness. Prosecutors have substantial discretion in determining how and when to file criminal charges. *State v. Stearns*, 2 Wn.3d 869, 877, 545 P.3d 320 (2024). However, prosecutorial discretion is limited by constitutional due process principles, which prohibit prosecutorial vindictiveness. *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006). There are two kinds of prosecutorial vindictiveness: actual vindictiveness and a presumption of vindictiveness. *Id.* Merz alleges a presumption of vindictiveness.

"A presumption of vindictiveness arises when a defendant can prove that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Id.* (quoting *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987)). "The prosecution may then rebut the presumption by presenting 'objective evidence justifying the prosecutorial action.'" *Id.* at 627-28 (quoting *Meyer*, 810 F.2d at 1245). If we find there was sufficient evidence for a jury to find Merz guilty of computer trespass in the first degree and electronic data theft, then we may conclude

14

that the prosecution was able to present objective evidence that justified its prosecutorial action of Merz.

Here, there was sufficient evidence to support the jury's verdict. Therefore, we find there is nothing in the record to support Merz's allegation of prosecutorial vindictiveness.

## CONCLUSION

We affirm Merz's convictions for computer trespass in the first degree and electronic data theft, but we remand to the trial court with instructions to strike the VPA, the DNA collection fee, and the jury demand fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Lee, J.

Che, J.